## CHARLES HENSHAW *et al. versus* CHARLES P. SUMNER.

The *St.* 1836, *c.* 238, to regulate the assignment and distribution of the property of insolvent debtors, does not impair the debtor's right of securing a particular creditor to the prejudice of other creditors, unless when attempted to be exercised by or in connexion with a conveyance by the debtor to assignees in trust for the use of any of his creditors.

An insolvent debtor sells, assigns and conveys certain goods to some of his creditors, *habendum* to them in proportion to their several demands against and liabilities for him, provided that if he shall pay them what he owes them severally and indemnify them respectively against their liabilities for him, then this bill of sale shall be void ; and the assignees may proceed immediately to sell the goods on such terms as they think judicious, and may and shall apply and distribute the net proceeds to pay them their several demands against and hold them harmless against their respective liabilities for the debtor, and any surplus property or proceeds shall belong to the debtor or his assigns. On the same day the debtor sells, assigns and conveys to the plaintiffs the same goods, subject to the conveyance above recited, *habendum* to the plaintiffs in proportion to their several demands against and liabilities for him, provided that if he shall pay them what he owes them severally and indemnify them respectively against their liabilities for him, then this bill of sale shall be void ; and the plaintiffs are authorized to receive from the prior assignees the same goods, or the proceeds thereof, or so much of either as shall remain after the demands of the first assignees against and liabilities for the debtor are paid and discharged, and the same to convert into money, and the net proceeds thereof to apply to the payment and discharge of their demands against and liabilities for the debtor, and the surplus, if any, pay to him. It was *held*, that these assignments were not conveyances in trust for creditors, and so were not void, by *St.* 1836, *c.* 238, as against attaching creditors. *Held* also, that they were not void as against such creditors, on the ground of uncertainty in the description of the demands and liabilities intended to be included in them, there being sufficient on the face of them to direct a person to the proper source for particular information of the amount of the incumbrances on the property.

TRESPASS against the sheriff of Suffolk, for taking and carrying away certain merchandise.

At the trial, before *Putnam* J., the plaintiffs proved the execution of an indenture, dated the 13th of July, 1837, and recorded on the 28th, between Joseph M. Brown of the first part, and Charles Henshaw and John Henshaw, the plaintiffs, of the second part, by which Brown, in consideration of one dollar and of his indebtedness to the plaintiffs severally and of their liabilities respectively for him, " sells, assigns and conveys to them his goods, wares and merchandises on board the brig Oriental, now at sea, and all his right, title and interest

therein, subject however to a previous conveyance of this date thereof to George W. Pratt " (and five other individuals and firms specified) " and to all the provisions and parts thereof, reference whereto to be had "; *habendum* to the plaintiffs " in proportion to their several demands against and liabilities for the party of the first part, provided that if the party of the first part shall pay to the parties of the second part what he owes them severally and indemnify and hold them harmless respectively against their liabilities for him, then this bill of sale to be void ; and if he shall pay any one of the persons, parties hereto of the second part, what he owes him and indemnify him against his liabilities for him, then this bill of sale, as to such one, shall be void, and in force as to the others "; and the plaintiffs are authorized to receive from Pratt and others, named in the first conveyance of the property, " the same or the proceeds thereof, whenever, or such and so much of either as shall remain after, the demands of those persons against and liabilities for the party of the first part are paid and discharged, and the same to convert into money and the net proceeds thereof to apply to the payment and discharge of their demands against and liabilities for the party of the first part, and the surplus, if any, pay to the party of the first part."

By the indenture referred to, (which also was recorded on the 28th of July, 1837,) between Brown, of the first part, and Pratt and others, of the second part, Brown, in consideration of one dollar paid him by Pratt and others, and of his indebtedness to them severally and respectively and their liabilities for him respectively and severally, sells, assigns and conveys to them his goods, wares and merchandise above mentioned, *habendum* to them in proportion to their several demands against and liabilities for him, provided that if he shall pay them what he owes them severally and indemnify and hold them harmless respectively against their liabilities for him, then this bill of sale to be void ; and if he shall pay and indemnify any one of them, it shall be void as to such one and in force as to the others ; " and immediately on the arrival of the property assigned, the parties of the second part may proceed to sell the same by such agents, and in such manner, and on such terms, as they think judicious, and may and shall apply and distribute the net pro-

ceeds to pay them their several demands against and hold them harmless against their respective liabilities for the said party of the first part ; and any surplus property or proceeds which may be left after paying and indemnifying themselves as afore-said, whether the conditions of this conveyance shall have been broken or not, shall belong to the party of the first part, or his . assigns."

The plaintiffs called witnesses to prove, that Brown was in-debted to them respectively on certain promissory notes pro-duced.

H. Bullard, a witness called by the plaintiffs, testified that he was a clerk of Brown ; that the brig Oriental arrived in Boston on the 28th of July, 1837 ; that her cargo was landed and stored in Brown's store in Boston ; that the property at-tached was a part of this cargo, and was in Brown's store when attached ; that Brown failed and became insolvent on the 6th of June, 1837 ; that he was then in possession of mer-chandise and other property, and that within the first or second day after his failure all his property open to attachment was disposed of by way of mortgage to particular creditors ; and that at the time of the arrival of the Oriental, he had no prop-erty open to attachment.

J. Garrett, called by the plaintiffs, testified that when the Oriental was telegraphed, he went down the harbour in a boat, with Brown and Charles Henshaw ; that they went on board the brig, and Brown delivered to Henshaw some horns, a part of the cargo, saying that he delivered all the property on board which belonged to him, as the property of Charles Henshaw and others ; and that this was before the attachment.

The plaintiffs called Pratt, who testified, that he was one of the mortgagees in the prior mortgage ; that on the arrival of the Oriental, he authorized Brown to take possession of the mortgaged property and sell it for the mortgagees, and that Brown remained in possession under that authority till the at-tachment was made ; that Brown's debt to him had been set-tled and paid by notes of third persons, which notes were satisfactory to him, and were the proceeds of property mort-gaged to him, which Brown had sold ; but he could not state whether this was done before or after the property was at tached by the sheriff.

The plaintiffs then called another of the mortgagees in the prior mortgage, who testified, that he authorized Brown to take possession of the property and sell it ; that he understood this to be for the benefit of all the mortgagees ; that the property was in Brown's possession under such authority when the attachment was made ; that the firm, in which the witness was a partner, were sureties on a customhouse bond for Brown, when the mortgage was made ; and that the bond had been paid, but whether before or after the attachment he did not know, although he could easily ascertain.

The defendant then put into the case the writ of attachment under which, as sheriff, he attached the property in question ; and he contended, that upon the facts proved it was lawful for him to make the attachment, because the mortgage to the plaintiffs was void as against the attaching creditor, 1. by reason of the statute of 1836, c. 238, to regulate the assignment and distribution of the property of insolvent debtors ; and, 2. because the condition of the mortgage was so vague and general as to amount to a fraud on the registry law. He further contended, that the facts disclosed in relation to the prior mortgage would prevent the plaintiffs from recovering in an action of trespass ; and that if they had any remedy, it was by an action on the case for an injury to their interest in the property.

As the facts were not controverted, the jury were directed to find the defendant guilty ; and a verdict was returned accordingly, subject to the opinion of the whole Court.

*C. P. Curtis* and *B. R. Curtis*, for the defendant, argued, that the plaintiffs' title to the property in question was invalid, by force of *St.* 1836, c. 238, § 1, 3, 11 ; that this statute was intended to discourage preferences among creditors, and it ought to be construed liberally, to carry into effect this equitable design ; *Perry* v. *Holden*, 22 Pick. 269 ; [*Fairbanks* v. *Haynes and Trs. ante*, 323 ;] *Worseley* v. *De Mattos*, 1 Burr. 474 ; 2 Bl. Comm. 471 ; *Dean, &c. of York* v. *Middleborough*, 2 Younge & Jerv. 215 ; *Harman* v. *Fishar*, Cowp. 117 ; *Rust* v. *Cooper*, ibid. 629 ; *The People* v. *Utica Ins. Co.* 15 Johns. R. 380 ; that as the deed to the plaintiffs refers to the deed to Pratt and others, the two instruments are to be

Henshaw
*v.*
Sumner.

Jan. 27th,
1840.

*Henshaw*
*v.*
*Sumner.*

construed together as one conveyance ; that they constituted an assignment in trust for the benefit of creditors, the grantees under the first instrument being trustees for Brown, who in the second instrument makes a declaration of the trust ; 1 Powell on Mort. (Rand's ed.) 9 *a*, note 1, and 12 *a* ; 4 Kent's Comm. (3d ed.) 146 ; that the mortgages were void, being in fraud of the registry law, inasmuch as they leave it wholly uncertain what debts and liabilities are intended to be embraced by them, and in what mode and at what time the condition is to be performed ; *Pettibone* v. *Griswold*, 4 Connect. R. 158 ; and that the goods, at the time of the attachment, were in the possession of Pratt and others, and not of the plaintiffs, and the plaintiffs, therefore, could not maintain an action of trespass.

*Choate* and *Crowninshield*, for the plaintiffs, cited *Bates* v. *Coe*, 10 Connect. R. 280.

*Feb. 10th, 1840.*

DEWEY J. delivered the opinion of the Court. The plaintiffs' title to the property, for the taking and carrying away of which damages are demanded in the present action, is derived through a conveyance made to them by Joseph M. Brown. This conveyance, it is contended on the part of the defendant, who represents certain attaching creditors, is void as against the attachments, being made in violation of the provisions of the statute of 1836, *c.* 238.

To sustain this objection, it must be made to appear that it is a conveyance by an insolvent debtor to assignees or trustees for the use of a part of his creditors, to the exclusion of others who might wish to become parties to it, or not so made as to give each of the creditors who shall become parties to it, a share of the property transferred, in proportion to their respective debts.

Is this instrument a conveyance in trust for the use of creditors ? Upon recurring to the instrument, it will be found to be, on the face of it, a transfer of certain personal property, " subject to a previous conveyance of the same date to George W. Pratt and others, and to all the provisions and parts thereof," and subject also to the following condition : " Provided, that if the party of the first part shall pay to the parties of the second part what he owes them severally, and indemnify and hold them harmless respectively against their liabilities for him,

then this bill of sale to be void ; " and with the further provis-
ion, that these mortgagees might receive from the prior mort-
gagees the same property, or the proceeds of the same, or
so much thereof as should remain after discharging all debts
and liabilities secured by the first conveyance, and the same
might convert into money and the net proceeds thereof apply
to the payment and discharge of their demands against and lia-
bilities for the mortgagor, and the surplus, if any, pay over to
him.

It is insisted, that the provisions of the conveyance to Pratt
and others, to which this is made subject, create a trust for
creditors, either by their own effect or from their connexion
with the mortgage to the plaintiffs, and that this trust is by
force of these conveyances effectually secured to a limited
number of the creditors of Brown, in exclusion of his other
creditors.

The conveyance to the first mortgagees was made upon con-
dition to be void upon payment of the debts due to, and the
discharge of all liabilities assumed by the mortgagees for the
mortgagor, and it also confers a full power on the mortgagees
to make sale of the mortgaged property in such manner and on
such terms as they may think judicious, and provides that any
surplus property, or proceeds thereof, which may be left after
paying and indemnifying themselves, shall belong to the mort-
gagor or his assigns. It is said, that the mortgage to Pratt and
others, raises a trust on the face of it, as it contains a power to
sell and dispose of the property, and an agreement to hold the
surplus, after discharging the debts and liabilities secured by
the mortgage, for the benefit of the mortgagor or his assigns.

In the opinion of the Court, however, the provisions con-
tained in the first mortgage have not the legal effect to make it
a conveyance in trust for creditors. If any trust was created
by that instrument, it was a trust for the mortgagor. There is
no reservation or appropriation of any portion of the mortgaged
property, or its proceeds, to the use of any other individual
than the mortgagees and mortgagor, or those who might subse-
quently acquire his right. There is no evidence in the case,
that the first mortgagees had any knowledge of a second mort-
gage to be made and executed simultaneously with the first, and

connected therewith. At the time of the execution of the second mortgage, Brown, the mortgagor, had in himself the right in equity of redeeming the property conveyed by the first mortgage, and the further right, if he neglected to redeem the same, to receive any surplus that might remain in the hands of the mortgagees after discharging the condition of their mortgage, and this right was an interest which was legally transferable to any of his creditors, by a second mortgage. The case, therefore, in no way differs from the ordinary one of two successive mortgages of the same personal property, by an insolvent debtor, to different creditors, to secure their respective debts.

The statute of 1836, *c.* 238, does not, as we think, impair the right of securing a particular creditor, to the prejudice of other creditors, unless when attempted to be done by or in connexion with an assignment or conveyance made by an insolvent debtor to assignees or trustees for the use of any of his creditors.

The object of the statute was to introduce a new and some what more effectual mode of conveyance by an insolvent debtor, of his property, for the benefit of all his creditors ; enabling him, by the force of such conveyance, to defeat all subsequent attachments made by individual creditors. It was also undoubtedly intended to discourage the making of conveyances giving preferences to any of his creditors, by holding out to a debtor the advantage of being fully discharged from his debts to some considerable extent, by giving such effect to all cases of debts due to those creditors who became parties to such assignment ; provided the debtor, among other things, had wholly abstained from any act of preference to any one of his creditors, in contemplation of making such assignment.

But this act did not profess to carry out the broad principle of entire equality in the distribution of all the effects of a debtor, to the extent that has since been more effectually provided for by the statute of 1838, *c.* 163. It allowed to exist in full force the right to secure a lien or preference in favor of any creditor by an attachment made before the execution of the assignment. It can hardly, therefore, be said to be a law intended to prevent all preferences in favor of individual cred-

itors, but is rather to be taken to have been enacted with a view to prevent a particular mode of creating preferences by assignments or conveyances by insolvent debtors, to assignees or trustees, in trust for certain creditors, where it should not be so made as to allow all the creditors of the debtor to become parties to it if they see fit, or to entitle all the creditors who shall become parties to it, to an equal share of the property in proportion to their respective debts.

The present case is entirely distinguishable from that of *Perry* v. *Holden*, 22 Pick. 269, which was that of a mortgage directly connected with a general assignment of all the debtor's property in trust for his creditors, and which was executed in connexion with, and made a part of, the same transaction, and was therefore held void.

But it is further contended, that the mortgage of the plaintiffs is invalid, because the amount of debts and liabilities intended to be secured by it is not described with sufficient precision in the mortgage itself. The rule on this point has undoubtedly fluctuated in some of the States of the Union. In the case cited from the State of Connecticut, *Pettibone* v. *Griswold*, 4 Connect. R. 158, a pretty strict rule was applied and a conveyance was held ineffectual as a lien, for not giving a sufficiently full recital of the intended incumbrance. In a later case, *Hubbard* v. *Savage*, 8 Connect. R. 219, the doctrine was modified and the rule stated to be, that the debts and liabilities should be "described with sufficient certainty to enable subsequent creditors or purchasers to ascertain, either from the condition of the deed, or by inquiry *aliunde*, the extent of the incumbrance, or from its nature, as in cases where the mortgage is for indemnity, that there is a prior lien which may not then be capable of ascertainment." In Massachusetts, a liberal rule has always, I believe, prevailed on this subject. *Badlam* v. *Tucker*, 1 Pick. 389. Indeed, the use of mortgages as security for future advances, and as indemnity for liabilities as sureties and indorsers, must necessarily exclude the idea of great precision in the exact amount of the incumbrance being made apparent on the face of the mortgage. There must be a sufficient general description to embrace the demands and liabilities intended to be secured, and to put the

person examining the records upon inquiry, and to direct him to the proper source for more minute and particular information of the amount of the incumbrance. We think that the mortgage made to the plaintiffs was sufficient in this respect, and this objection cannot prevail.

It was also further objected, that the plaintiffs are not entitled to maintain an action of trespass *de bonis asportatis.*

Upon this question the Court are not disposed to pronounce any final decision at this time, as we are apprehensive that the facts are not set forth so fully and distinctly as they should be, to present that question properly for a final decision on its merits. The rule is correctly stated by the counsel for the defendant, that to maintain this action, the plaintiffs must show that they had either the actual possession of the property, or the right to the possession, and if upon further inquiry as to the facts, it shall be made to appear, that at the time the trespass is alleged to have been committed, the mortgaged property was in the exclusive possession of the first mortgagees on their own sole account as prior mortgagees, the action in its present form cannot be maintained. On the other hand, if it shall appear that the possession of the property was, at the time of the attachment by the defendant, held for the common benefit of the mortgagees, in both mortgages, then *trespass* may be maintained ; and if it shall appear that the incumbrance of the first mortgage has been wholly discharged, the plaintiffs will be entitled to recover for the entire value of the property taken, but if otherwise, only to the extent of the interest they had in the property.